# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 676 | **DATE** | 3/20/2001 |
| **CASE TITLE** | JOSEPH MATA vs. IL STATE POLICE, ET AL | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Motion (22-1) to dismiss is granted/denied in part.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | MAR 2 2 2001 date docketed | |
| | Notified counsel by telephone. | | | 26 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| DW | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOSEPH MATA,

    Plaintiff,

v.

ILLINOIS STATE POLICE, STATE OF ILLINOIS, SAMUAL NOLAN [sic], Director of Illinois State Police, STATE POLICE MERIT BOARD, NANCY M. BEASLELY, RICHARD D. JOUTRAS, JOHN REDNOUR, KENNETH SCHLOEMER, SCOTT F. TUROW, NORMAN MARTIN and BRADFORD HINES,

    Defendants.

No. 00 C 0676
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Trooper Joseph Mata brings this action against the Illinois State Police (ISP), its Director, the State Police Merit Board, its members, District 15 Captain Norman Martin and District 15 Master Sergeant Bradford Hines alleging discrimination in promotion and retaliation in violation of 42 U.S.C. § 1983 and 42 U.S.C. § 2000e (Title VII). Mata seeks to represent a class of Hispanic employees who have been subjected to discriminatory promotion policies; he also alleges individual claims for discrimination and retaliation. Defendants move to dismiss the entire complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6).

Initially, I must clarify the parties sued under § 1983. Counts I (Equal Protection) and III (Equal Protection/First Amendment) are styled as § 1983 claims against the ISP, the Merit Board



and individuals (Director Nolen[1] and the Merit Board members) in their official capacity. States and their agencies are not "persons" within the meaning of § 1983. Officials acting in their official capacities are not "persons" either, at least when sued for retrospective relief. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312 (1989).[2] Official-capacity actions for prospective relief are permitted by § 1983, and are not barred by the Eleventh Amendment. *Id.* at 71 n.10; *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441 (1908); *Power v. Summers*, 226 F.3d 815, 819 (7th Cir. 2000). Therefore, I dismiss the State of Illinois, the ISP and the Merit Board (the agency defendants) from Counts I and III, and strike the request for compensatory damages from Count III. See Amended Complaint, Count III, Prayer for Relief ¶ E. If these counts state claims, they may only proceed against Director Nolen and the Board members in their official capacities for the injunctive relief requested.

1.  Facts[3]

The ISP uses three factors to evaluate an employee's prospect at promotion; the process generates a numerical score. The applicant's performance on written exam is 50% of the total score; a subjective evaluation by the employee's supervisor is 45% of the total; and seniority accounts for the remaining 5%. The ISP ranks all applicants in each Division or Area according to their total score, and the Merit Board certifies the top 65% on each list as eligible for promotion in the next year. The lists are further divided between the top ten employees and the

---

[1] Director Nolen's name is misspelled in the caption to the Amended Complaint.

[2] Coincidentally, *Will* was a suit filed against the Michigan State Police and its Director in his official capacity alleging the denial of a promotion for an improper reason. *Will*, 491 U.S. at 60, 109 S.Ct. at 2306.

[3] The following facts are taken from Mata's amended complaint, and since this is a motion to dismiss, I assume them to be true.

2

rest. The top ten on each list are considered equally qualified, and when an opening occurs, one of the top ten gets the job.[4] In this system, the person ranked tenth could be promoted before the person ranked first.

Trooper Mata received a rank of 14 on the 1997 ISP promotion list for Sergeant. This list was valid until November 30, 1998. In February, 1998, the top five troopers received promotions and Mata moved up to number nine -- he was now in the top ten. In November, 1998, the tenth ranked trooper, Mark Pilgrim, got a promotion; the ISP passed Mata over. Mata is Hispanic and Pilgrim is not.

In 1998, Hispanic employees accounted for 6% of the total sworn ISP workforce (122 out of 2048); by rank, Hispanic employees accounted for 7.1% of the troopers, 5% of the sergeants, 4% of the master sergeants, 4% of the lieutenants, 2.9% of the captains, 0% of the majors, 0% of the assistant deputy directors and 20% (1 out of 5) of the deputy directors. 68% of the Hispanic workforce were troopers (83 out of 122). Amended Complaint, Exh. 4 Chart B. In 1980, 90% of the Hispanic employees were troopers (29 out of 32), and there were no Hispanic officers above the rank of sergeant. Amended Complaint, Exh. 4 Chart A.

Mata alleges that Captain Martin and Master Sergeant Hines discriminated and retaliated against him once he was in the top ten, *i.e.* right at the moment he was eligible for promotion. In February, 1998, Mata was transferred from day to evening shift in District 15. At the time, he was taking an evening course in Constitutional Law from Northern Illinois University. Captain Martin knew Mata was taking evening courses; his coursework was part of the ISP

---

[4] Once there is an opening in the top ten, the next person on the certified promotion list is bumped into that pool.

Integrated Strategic Performance Plan. The shift change occurred too late in the semester for Mata to withdraw from the class, so he had to take a failing grade. Mata was not consulted about the shift change and he believes Captain Martin ordered it. The practice at the time was to transfer the least senior person in the District, but Mata was not the least senior person in District 15. Mata filed a grievance on February 18, 1998 stating his shift change was arbitrary and capricious and done with malicious intent.

Mata applied for a position as a Commercial Vehicle Enforcement Officer (CVEO) in April 1998. Although not in the direct chain of command, this position would have been considered a promotion for Mata. No formal selection criteria exists for the filling of CVEO positions, but Mata alleges that the practice is to use the candidate's rank on the promotion list. Mata (in the top ten) did not get the position; instead a non-Hispanic male, Trooper Redmond, got the job. Redmond was ranked 42 out of 43 on the promotional list. Captain Martin made the selection. Then, as noted above, in November, 1998 Mata was passed over for a promotion to Sergeant. Mata filed another grievance in November, to protest the Sergeant promotion. He also requested a transfer out of District 15. The transfer was approved and became effective June 1, 1999.

On December 20, 1998 Sergeant Hines gave Mata his evaluations for the 1998 promotion list. Hines gave Mata a lower score than he received the year before, and this lowered his rank overall. Mata sent a memo to Lt. Strohl stating his belief that this subjective evaluation was made in retaliation for his grievances. On December 28, 1998 Captain Martin wrote that Mata's failure to advance was in part the result of his choice "to question and challenge the department's goals

4

and objectives, rather than contribute to them. He chooses to threaten the use of the bargaining unit and the EEO office for his advancement, rather than to demonstrate the qualities desired for advancement to the next level. Even Trooper Mata's logic in writing such inflammatory and degrading remarks only speaks to his lack of professionalism, lack of diplomacy, his inability to accept change, his failure to accept responsibility for his action or inactions, and the self-centered immature methods he employs to resolve conflict." Amended Complaint, Exh. 11. Mata responded to this memo by filing a grievance the same day, arguing the memo was retaliatory. Captain Martin then sent his memo through interoffice mail without a cover letter or envelope. At least two of Mata's co-workers saw and read the Martin memo. On December 29, Mata then filed a grievance against the "uncovered" memo.

On December 30, 1998 Mata was ordered to attend the Career Enhancement Program, which is run by a psychologist and commonly known as "Bad Boy" school. Mata was never told why he was being sent to Bad Boy school, and Article Seven of the Officers' Bill of Rights states that no officer shall be required to submit to psychological testing or questioning unless there is an assertion of disability for psychological reasons. On December 30, Mata filed a grievance. All of Mata's grievances were denied.

Finally, in January, 1999 Mata gave a speeding ticket and a warning for not having valid registration to a civilian, Kimberly Kouzios. In February, Sergeant Hardwick gave Mata "negative counseling" for issuing a seat belt warning to Kouzios. Seat belt warnings are not to be issued by any Trooper, pursuant to the ISP's zero tolerance seat belt policy. Mata denied giving such a warning and argued that the "X" that had been placed in the seat belt warning box on ISP's

copy of the ticket was not placed there by him. Kouzios confirmed that Mata had not issued her a seat belt warning. Captain Martin did not investigate the mysterious "X" and referred to the incident as a joke.

2. **Count II -- Title VII Class Action**

Mata's Count II is a class claim for disparate impact discrimination in violation of Title VII. He seeks to represent all Hispanic persons who have been, are, or may become candidates for the rank of sergeant or above and who have been, are or may become subject to ISP's employment policies and practices.

It does not take much to survive a motion to dismiss. "'I was turned down for a job because of my race' is all a complaint has to say." *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998). Failure to plead a convincing picture of the alleged wrongdoing is not a failure to state a claim. *American Nurses' Association v. Illinois*, 783 F.2d 716, 727 (7th Cir. 1986). Moreover, Mata does not need to even plead the *prima facie* elements of a discrimination claim in his complaint. *Kozlowski v. Fry*, 2001 WL 109545 \* 4 (N.D. Ill. 2001).

The defendants have notice of Mata's discrimination claim. He says they use subjective evaluation procedures in determining eligibility for and the granting of promotions. He says these procedures have a disparate impact on Hispanic employees. If he can prove these allegations, he has a case. The complaint clearly identifies those aspects of the promotion policies Mata finds offensive: the 45% weight given to subjective evaluation and the subjectivity of the elevation out of the top ten.

Perhaps, however, Mata has pled himself out of court with his statistics. It seems as though Hispanic employees were better off in 1998 than they were in 1980, and looking solely at 1998, the numbers are not wildly disparate. Hispanic employees made up 6% of the workforce (7.1% of the troopers) and 5% of the sergeants. A deviation of 1 or 2% is not necessarily "statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs in or promotion because of their membership in a protected group." *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994, 108 S.Ct. 2777, 2789 (1988). Moreover, the statistics alleged in the complaint do not account for those troopers who were not eligible to take the promotion exam or those troopers who were eligible but chose not to apply. The relevant labor market is likely to be those troopers who could have been and wanted to be promoted. The numbers for that market are not alleged.

But there is no reason Mata would have this kind of statistical evidence yet. He has mustered what he could to put in a complaint. The fact that some of his allegations may be irrelevant does not mean he fails to state a claim. *Bennett v. Schmidt*, 153 F.3d at 518 (prolixity is a poor ground for rejecting potentially meritorious claims). At most, Mata's statistics do not prove his case, but they do not disprove it either. Litigants plead themselves out of court by alleging facts that establish defendants' entitlement to prevail, not by merely citing the wrong reference population; "better data might be gathered during discovery." *Id.* I must look at the complaint with deference to the plaintiff, and I cannot require him to prove his case now.

Now is not the time to address class certification issues. The breadth of Mata's class definition and his adequacy as a class representative ought to be tested against a better record. It

is his burden to demonstrate the appropriateness of a class action. Mata may be unable to meet this burden for a class composed of all employees state-wide (as opposed to District 15), or all ranks (as opposed to only those troopers seeking to become sergeants), but I cannot say it is impossible for a class of some Hispanic employees to be maintained. This is a dispute for a later day.

3.   Counts I and III -- § 1983 Against Director and Merit Board Members

Defendants' sole argument for dismissal of Counts I and III is Eleventh Amendment immunity. However, as discussed above (*supra.* at 2), the Eleventh Amendment does not bar § 1983 official-capacity suits for prospective relief.

I note that a *prima facie* case of racial discrimination under the Fourteenth Amendment must allege that defendants acted with discriminatory intent; this is more than is required to state a claim for disparate impact discrimination under Title VII. *Sims v. Mulcahy*, 902 F.2d 524, 538-539 (7th Cir. 1990). Intent may be averred generally. Fed. R. Civ. P. 9(b). The complaint states that the defendants "intentionally subjected Plaintiff and the Class to unequal and discriminatory treatment by denying promotions to qualified Hispanics on the basis of their ancestry or national origin...." Amended Complaint ¶ 62. This is enough to survive a 12(b)(6) motion.

4.   Count IV -- § 1983 Against Martin and Hines

   a.   Equal Protection

Mata says Martin and Hines intentionally discriminated against him on the basis of his race and national origin when they: passed him over for promotion, transferred him from the day shift, lowered his evaluation score, ordered him to receive negative counseling, failed to

8

investigate the Kazious ticket, and generally failed to investigate or correct discrimination and retaliation.

The complaint sufficiently puts Martin and Hines on notice that they are accused of intentionally treating Mata differently because of his race, and it sufficiently alleges personal involvement on their part for at least some actions. Martin is alleged to have made promotion decisions (with respect to the CVEO position) and ordered the shift change; both Hines and Martin participated in the evaluation (Hines to a greater degree than Martin). But it does not allege the personal involvement of either officer in the decision to send Mata to Bad Boy school or to give him negative counseling. The general allegations of failure to investigate and supervise are also insufficient; nowhere is it alleged that Martin and Hines had the authority to investigate and correct discrimination. Martin and Hines are not alleged to have participated in the decision not to promote Mata out of the top ten to Sergeant. Therefore, Mata may proceed against Martin and Hines for only those acts that he specifically alleges they did with discriminatory animus – the shift change, CVEO position, and the evaluation.

b.  First Amendment Retaliation

Plaintiff alleges that Martin and Hines intentionally violated Trooper Mata's First Amendment rights when they: lowered his evaluation scores, placed a memo in interoffice mail without a cover sheet, and ordered him to attend the Career Enhancement Program in retaliation for complaining about discrimination.

Defendants argue that Mata's complaints were not made as a citizen speaking on a matter of public concern and therefore are not protected by the First Amendment.[5] Individual employee disputes are generally not constitutionally protected. *Campbell v. Towse*, 99 F.3d 820, 827 (7th Cir. 1996). Allegations of racial discrimination by a public employer do implicate societal interests,[6] but much of Mata's speech is in the context of a private personnel dispute with his superiors; this weighs against affording the grievances First Amendment protection. *Id.*; see also *Taylor v. Carmouche*, 214 F.3d 788, 793 (7th Cir. 2000) (whether a given supervisor practices racial discrimination is "a mundane issue of fact" not a matter of public concern). Mata was acting not as a concerned citizen, but as an aggrieved employee. Therefore, despite the arguably public dimension of Mata's internal grievances, their form and context were private. *Collins v. Village of Woodbridge*, 96 F. Supp.2d 744, 754-755 (N.D. Ill. 2000) ("when a public employee speaks to matters addressing only her own employment conditions, the First Amendment does not protect her from retaliation").

Mata's December 21, 1998 charge to the EEOC, however, alleges a policy and practice of discriminating against Hispanics and a discriminatory impact on the opportunities of other Hispanics. This goes beyond Mata's individual employment conditions and thus raises an issue of public concern. Mata therefore states a First Amendment retaliation claim only for conduct occurring after December 21, 1998.

5.    **Count V -- Title VII Individual Claim**

---

[5]    Whether the speech is a matter of public concern is a question of law. *Taylor v. Carmouche*, 214 F.3d 788, 792 (7th Cir. 2000).

[6]    See *Taylor*, 214 F.3d at 794 (Williams, J. dissenting).

10

### a. Retaliation

To state a claim for retaliation in violation of Title VII, Mata must show 1) he engaged in activity protected under Title VII; 2) he suffered an adverse employment action; and 3) a causal connection between the adverse action and his protected activity. *Fyfe v. City of Fort Wayne*, – F.3d –, 2001 WL 171173 * 3 (7th Cir. 2001).

Not all of Mata's grievances are Title VII grievances – they do not protest racial or national origin discrimination. His February 18 grievance challenged the shift change as "arbitrary and capricious" and done with "malicious intent." Not until November 12, 1998 did Mata file a grievance accusing the ISP of discrimination. ISP can be liable for Title VII retaliation only for adverse actions taken after November 12.

After the November 12, 1998 grievance, Sergeant Hines gave Mata his evaluation resulting in a lower score than the year before. Mata was also sent to Bad Boy school and given negative counseling for the Kouzios ticket. None of these actions rise to the level of adversity required by Title VII.[7] The evaluation may have affected Mata's chance at promotion, but was only a fraction (45%) of the calculus; adverse performance ratings are not adverse action. *Smart v. Ball State University*, 89 F.3d 437, 442 (7th Cir. 1996). Bad Boy school and negative counseling, even if construed as discipline did not have any tangible job consequence to Mata – his responsibilities were not altered. The failure to investigate the mysterious "X" on the ticket similarly did not affect Mata's job. Whether these actions, and those that occurred before November 12, constitute discrimination is a different question; however, I dismiss the Title VII retaliation claim.

---

[7] There is no requirement of an adverse employment action in a First Amendment § 1983 claim. *Power v. Summers*, 226 F.3d 815, 820 (7th Cir. 2000).

11

b.  Discrimination

Defendants argue that Mata fails to plead a discrimination claim because he does not allege that similarly situated non-Hispanics were treated more favorably. I think the complaint fairly puts the defendants on notice that Mata believes his shift change, the CVEO promotion and the Sergeant promotion were all rigged against him because of his race or national origin; that is all the complaint needs to do. If Mata is unable to produce direct evidence of discrimination and resorts to the indirect method of proof, he may have some difficulty given the fact that white males were also passed over for promotion. However, since the complaint, read liberally, pleads both direct and indirect discrimination in Mata's individual case, it survives the motion to dismiss.

7.  Conclusion

Defendants' motion to dismiss is granted in part/denied in part. The First Amendment and the Equal Protection claims against Martin and Hines are dismissed in part. The Title VII retaliation claim is dismissed. The § 1983 claims against the State of Illinois, the ISP and the Merit Board are dismissed.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: MAR 2 0 2001